WO　　　　　　　IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Catherine Anne Morris, )
　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　　　　　　)
　　vs. )
　　　　　　　　　　　　　　　　　　　　　　　　　)
Nancy A. Berryhill, Deputy Commissioner of )
Social Security for Operations, )
　　　　　　　　　　　　　　　　　　　　　　　　　)　　No. 2:18-cv-1399-HRH
　　　　　　　　　　　　　Defendant. )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff Catherine Anne Morris has timely filed her opening brief,[1] to which defendant Nancy A. Berryhill has timely responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

On September 16, 2016, plaintiff filed applications for disability benefits under Title II and Title XVI of the Social Security Act, alleging that she became disabled on December

---

[1]Docket No. 13.

[2]Docket No. 17.

31, 2013. Plaintiff alleged that she is disabled due to bipolar disorder, depression, and schizophrenia. Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested a hearing. After a hearing on September 26, 2017, an administrative law judge (ALJ) denied plaintiff's claims. Plaintiff sought review of the ALJ's unfavorable opinion. On March 9, 2018, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's January 9, 2018 decision the final decision of the Commissioner. On May 7, 2018, plaintiff commenced this action in which she asks the court to review the Commissioner's final decision.

General Background

Plaintiff was born on December 3, 1979. She was 37 years old at the time of the administrative hearing. Plaintiff has a college education. Plaintiff's past relevant work includes work as a case manager, a house parent, a telemarketer, a house manager, a collection agent, and a dispatcher.

The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2017."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 12.

[4]The five steps are as follows:

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since December 31, 2013, the alleged onset date. . . ."[5]

At step two, the ALJ found that plaintiff had the "following severe impairments: cannabis dependence, schizoaffective disorder, [and] depressive disorder. . . ."[6] The ALJ found plaintiff's GERD and obesity to be non-severe impairments.[7]

At step three, the ALJ found that plaintiff did "not have an impairment or combination

---

[4](...continued)
> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 12.

[6]Admin. Rec. at 12.

[7]Admin. Rec. at 13.

of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[8] The ALJ considered Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).[9] The ALJ considered the paragraph B criteria. The ALJ found that plaintiff had moderate limitations "[i]n understanding, remembering, or applying information," "[i]n interacting with others," and "in her ability to adapt or manage herself."[10] The ALJ also found that plaintiff had moderate limitations as to concentration, persistence, and pace.[11] Because plaintiff's mental impairments did "not cause at least two 'marked' limitations or one 'extreme' limitation," the ALJ concluded that the paragraph B criteria were not met.[12] The ALJ also considered the paragraph C criteria and found that they were not met because plaintiff "has more than a minimal capacity to adapt to changes in her environment and to demands that are not already part of her daily life."[13]

"Between steps three and four, the ALJ must, as an intermediate step, assess the

---

[8]Admin. Rec. at 13.

[9]Admin. Rec. at 13.

[10]Admin. Rec. at 13-14.

[11]Admin. Rec. at 14.

[12]Admin. Rec. at 14.

[13]Admin. Rec. at 14.

claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple and detailed work, but not complex work, occasional interaction with [the] public, coworkers, and supervisors, occasional changes in workplace setting, and no hazards."[14]

The ALJ found plaintiff's symptom statements less than credible because they were inconsistent with the medical evidence, because medications have been "relatively effective in controlling" plaintiff's symptoms, because she had "not received any ongoing treatment until 2016," and because her statements are inconsistent with her daily activities.[15]

The ALJ gave little weight to the lay testimony of plaintiff's sister, Cynthia McCormack.[16] The ALJ gave little weight to Dr. Koster's opinion.[17] The ALJ also gave little weight[18] to Dr. Marks' opinion.[19] And, the ALJ gave little weight to plaintiff's GAF

---

[14]Admin. Rec. at 14.

[15]Admin. Rec. at 15-16.

[16]Admin. Rec. at 15. McCormack's testimony is discussed below in detail.

[17]Admin. Rec. at 16-17. Dr. Koster's opinion is discussed below in detail.

[18]Admin. Rec. at 16.

[19]On December 23, 2013, Glen Marks, Ph.D., did a psychological evaluation. Dr. Marks opined that any limitations that plaintiff had flowing from her mental impairments were not "expected to last 12 continuous months from the date of" his exam. Admin. Rec.
(continued...)

scores.[20] The ALJ gave some weight[21] to the opinions of Dr. Titus[22] and Dr. Bailey.[23]

---

[19](...continued)
at 400.

[20]Admin. Rec. at 17. Plaintiff's GAF score was 50 on July 5, 2012; August 30, 2012; January 17, 2013; and March 3, 2013; and 60 on March 14, 2013; August 1, 2013; and September 30, 2013. Admin. Rec. at 351, 375, 380, 389, 389, 391, 394, 395.

[21]Admin. Rec. at 17.

[22]On November 30, 2016, Anna Titus, Ph.D., opined that plaintiff was not significantly limited in her ability to remember locations and work-like procedures, understand/remember/carry out very short and simple instructions, make simple work-related decisions, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, be aware of hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others; and was moderately limited in her ability to understand/remember/carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Admin. Rec. at 61-62. Dr. Titus further opined that plaintiff "has an adequate ability to function in an unskilled (1-2 step) work environment that is structured, predictable, with minimal changes, and minimal social demands, where interaction with others is superficial and occasional." Admin. Rec. at 62-63.

[23]On February 15, 2017, Stephen Bailey, Ed.D., opined that plaintiff was not significantly limited in her ability to remember locations and work-like procedures, understand/remember/carry out very short and simple instructions, make simple work-related decisions, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, use public transportation, and set realistic goals or make plans independently of others; and was moderately limited in her ability to remember/understand/carry out detailed
(continued...)

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work. . . ."[24]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform[,]" including production assembler, addresser, and small parts assembler.[25]

The ALJ thus concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from December 31, 2013, through the date of this decision. . . ."[26]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings

---

[23](...continued)
instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, ask simple questions or request assistance, accept instructions, respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Admin. Rec. at 92-93. Dr. Bailey further opined that plaintiff "has an adequate ability to function in an unskilled (1-2 step) work environment that is structured, predictable, with minimal changes, and with minimal social demands, where interaction with others is superficial and occasional." Admin. Rec. at 94.

[24]Admin. Rec. at 17.

[25]Admin. Rec. at 18-19. This finding was based on the testimony of Kathryn Atha, the vocational expert. Admin. Rec. at 43-44.

[26]Admin. Rec. at 19.

and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred in rejecting Dr. Koster's opinion. On April 18, 2017, Dr. Koster opined that plaintiff had moderate limitations in her ability to understand/remember simple instructions, apply information to make judgments on simple work-related decisions, maintain concentration for up to one hour, sustain an ordinary routine without special supervision, interact appropriately with the public and co-workers, and

respond appropriately to changes in a routine work setting; and marked limitations in her ability to understand/remember detailed instructions, maintain attention and concentration for up to two hours, perform activities within a schedule at a consistent and continuous speed, interact appropriately with supervisors, and respond appropriately to work pressures in a usual work setting.[27] Dr. Koster also opined that plaintiff would be off task 20% of the time, would be absent from work five or more days per month, would be unable to complete an 8-hour day five or more days per month, and that compared to an average worker, plaintiff would only be 70% efficient at her work on a sustained basis.[28]

Dr. Koster was a treating physician. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Dr. Koster's opinion was contradicted by Dr. Marks', Dr. Titus', and Dr. Bailey's opinions. Thus, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Koster's opinion.

The ALJ rejected Dr. Koster's opinion because it was inconsistent with her treatment

---

[27]Admin. Rec. at 576.

[28]Admin. Rec. at 577.

notes, because it was inconsistent with plaintiff's "achieved score of 29 points out of 30 on the MMSE, which indicates normal cognition[,]" and because it was inconsistent with plaintiff's "subjective reports that she could prepare meals, pay bills, shop and read."[29] Plaintiff argues that these were not specific and legitimate reasons for rejecting Dr. Koster's opinion.

As for the first reason, that Dr. Koster's opinion was inconsistent with her treatment notes, the ALJ explained that Dr. Koster's treatment notes from 2016 and 2017 "noted that the claimant was oriented, alert, had normal speech quantity, logical thought process, euthymic mood, appropriate effect, good memory, good concentration, and fair insight and judgment."[30] The ALJ then cited to Exhibit 9F as support. Exhibit 9F is over three hundred pages of mental health records from Community Bridges and it includes Dr. Koster's treatment notes.[31]

To properly reject a treating physician's opinion, an ALJ must set out "'a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). Listing some general mental status findings and then citing generally to a 300-page exhibit is not sufficiently

---

[29]Admin. Rec. at 16-17.

[30]Admin. Rec. at 16.

[31]Admin. Rec. at 578-904.

specific.  See, e.g., Spendlove v. Comm'r of Social Sec. Admin., Case No. CV-17-08157-PCT-DGC, 2018 WL 3633744, at *3 (D. Ariz. July 31, 2018) ("the ALJ's citation to 50 pages of treatment notes is inadequate" because "[t]he ALJ's reasoning and broad citations do not explain how specific clinical findings are inconsistent with the doctor's limitations").  Moreover, "the affect and mood notes that the ALJ emphasized simply described how [plaintiff] presented on the days of her appointments.  They were not general assessments." Gerstner v. Berryhill, 879 F.3d 257, 262 (7th Cir. 2018) (emphasis omitted).  As the Ninth Circuit has observed, "treatment records must be viewed in light of the overall diagnostic record."  Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014).  Here, the overall diagnostic record indicated that plaintiff had significant limitations flowing from her mental impairments, as Dr. Koster opined. The first reason given by the ALJ for rejecting Dr. Koster's opinion was neither specific nor legitimate.

As for the second reason, that Dr. Koster's opinion was inconsistent with the findings of a single mini-mental status examination (MMSE), the MMSE does measure cognitive function, as the ALJ indicated.  But, plaintiff's limitations flow from her schizoaffective disorder and her depressive disorder, not from any cognitive disorder.  The Ninth Circuit has pointed out, "observations of cognitive functioning during therapy sessions do not contradict [a claimant's] reported symptoms of depression and social anxiety."  Id.  Similarly, observations as to plaintiff's cognitive functioning do not contradict her reported symptoms of depression and hearing voices.  The limitations that Dr. Koster assessed were not limited

-11-

to cognition issues, but included limitations that flowed from plaintiff's depressive and schizoaffective disorders. The second reason the ALJ gave for rejecting Dr. Koster's opinion was not legitimate.

As for the third reason, that Dr. Koster's opinion was contradicted by plaintiff's daily activities, the Ninth Circuit has recognized that

> "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."

Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012)). Here, the ALJ did not explain how preparing meals, paying bills, shopping, and reading would translate into the ability to perform full-time work. The third reason given by the ALJ for rejecting Dr. Koster's opinion was not legitimate.

Because none of the reasons the ALJ gave for rejecting Dr. Koster's opinions were proper, the ALJ erred in rejecting Dr. Koster's opinion.

Plaintiff next argues that the ALJ erred in finding that plaintiff's symptom statements were less than credible. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison, 759 F.3d at 1014. "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to

produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted).

The ALJ found plaintiff's symptom statements less than credible because medications have been "relatively effective in controlling" plaintiff's symptoms, because she had "not received any ongoing treatment until 2016," because her statements are inconsistent with her daily activities, and because her statements were inconsistent with the medical evidence.[32] Plaintiff argues that none of these reasons were clear and convincing.

As for the first reason, that medications had been relatively effective in controlling plaintiff's symptoms, plaintiff points out that the Ninth Circuit has

> emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison, 759 F.3d at 1017. This is what the ALJ has done here, according to plaintiff.

This was a clear and convincing reason for finding plaintiff's symptom statements less than credible because in numerous treatment notes, plaintiff reported that she was doing well, found her medications beneficial, and had no side effects from her medication.[33] "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017).

As for the second reason, that plaintiff did not receive ongoing treatment until 2016,

---

[32]Admin. Rec. at 15-16.

[33]Admin. Rec. at 617, 692, 694, 721, 723, 776, 778, 879, 881.

plaintiff argues that the record shows that she was incarcerated from 2014-2016 and that she did receive limited mental health treatment, including medications, while in prison.[34] Plaintiff seems to be suggesting that her incarceration was the reason for lack of treatment, not that her impairments were not as disabling as she alleged.

This was not a clear and convincing reason to find plaintiff's statements less than credible. The primary reason for the lack of treatment was plaintiff's incarceration. Moreover, the Ninth Circuit "has remarked, 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Garrison, 759 F.3d at 1018 n.24 (quoting Nguyen v Chater, 100 F.3d 1462, 1465 (9th 1996)).

As for the third reason, that her statements were inconsistent with her daily activities, the ALJ listed activities such as plaintiff visiting her daughter and family, going bowling, driving, personal grooming, and cleaning her house.[35] Plaintiff argues that the ALJ did not explain how these activities would translate into the ability to work on a full-time basis. Moreover, plaintiff argues that the ALJ did not find that she spent a substantial part of her day doing these activities, which is what would be required in order to find that she was capable of full-time work. Plaintiff acknowledges that the ALJ also listed her part-time work as a one of her activities that was inconsistent with her symptom statements.[36] But, plaintiff

---

[34]Admin. Rec. 416, 429-436.

[35]Admin. Rec. at 16.

[36]Admin. Rec. at 16.

argues that this reason fails because she was only working part time.

This was a clear and convincing reason for finding plaintiff's symptom statements less than credible primarily because plaintiff was able to work part time. Although this work was only part time, "[e]ven" when daily "activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1113.

As for the last reason, that plaintiff's statements were not consistent with the medical evidence, this was not a clear and convincing reason because the ALJ failed to tie any particular symptom to any specific medical evidence. It is not sufficient for the ALJ to discuss the medical evidence; the ALJ must provide "reasons for the credibility determination." Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014).

Because the ALJ gave two clear and convincing reasons for finding plaintiff's symptom statements less than credible, the ALJ did not err in finding plaintiff's symptom statements less than credible. There was substantial evidence supporting the ALJ's credibility finding.

Finally, plaintiff argues that the ALJ erred in giving little weight to the lay testimony of Cynthia McCormack, plaintiff's sister. On September 27, 2016, McCormark described plaintiff's typical day as "eats, sleeps, eats lunch."[37] McCormack reported that plaintiff "sleeps a lot due to depression," that she did not have any problems taking care of her

---

[37]Admin. Rec. at 260.

personal needs, but that she did need reminders to shower.[38] McCormack reported that plaintiff could make simple meals such as frozen dinners and sandwiches and that she can do the dishes and take out the trash.[39] McCormack testified that plaintiff did not drive because her license is suspended, but that she takes taxis to get around and goes grocery shopping once a week for about 20 minutes.[40] McCormack reported that plaintiff gets angry or irritable when interacting with others.[41] McCormack reported that plaintiff has short term memory loss and that she starts something but does not finish it, that she has poor concentration during conversations, that she can walk for 30 minutes, can pay attention for 10 minutes, and does not follow written or spoken instructions well.[42] McCormack reported that plaintiff does not get along with authority figures well, does not handle stress well, and does not handle changes in her routine well.[43] McCormack reported that plaintiff "thinks people are following her & authority wants to hurt her. She sees people that aren't there."[44]

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives

---

[38]Admin. Rec. at 261-262.

[39]Admin. Rec. at 262

[40]Admin. Rec. at 263.

[41]Admin. Rec. at 265.

[42]Admin. Rec. at 265.

[43]Admin. Rec. at 266.

[44]Admin. Rec. at 266.

-17-

reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ considered McCormack's testimony and gave it little weight because her "lay opinions [are] based upon casual observation, rather than objective medical testing."[45]

If this were a valid reason to reject lay testimony, an ALJ would never have to consider lay testimony. Lay testimony is never based on objective medical testing. This reason is akin to finding lay testimony not supported by the objective medical evidence, which in the Ninth Circuit is not a valid reason for rejecting lay testimony. Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017). As the Ninth Circuit has explained, "[t]he fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." Id. The ALJ erred in giving McCormack's testimony little weight.

Because the ALJ erred as to Dr. Koster's opinion and McCormack's testimony, the court must decide whether to remand for an award of benefits or for further proceedings. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id.

---

[45]Admin. Rec. at 15.

(quoting Garrison, 759 F.3d at 1020). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." Treichler v. Comm'r of Social Sec. Admin., 775 F.3d 1090, 1101 (9th Cir. 2014). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Brown-Hunter, 806 F.3d at 495 (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

Here, a remand for an award of benefits is appropriate. Further proceedings would serve no useful purpose. The vocational expert testified that there would be no work for someone with the limitations that Dr. Koster assessed.[46] If Dr. Koster's opinion is credited as true, the ALJ would be required to find plaintiff disabled on remand. Especially given the nature of the ALJ's findings of severe impairment (schizoaffective and depressive disorders), the ALJ's finding that plaintiff's testimony was less than credible does not undermine or detract from the force of Dr. Koster's treatment records and opinion. The testimony of McCormack, to which the ALJ should have given greater weight, was consistent with Dr. Koster's opinion and reinforces the court's conclusion that this is not a case, when the record

---

[46]Admin. Rec. at 45-46.

as a whole is considered, in which there is serious doubt as to whether plaintiff is disabled. Rather, consideration of the record as a whole creates no doubt that plaintiff is in fact disabled.

## Conclusion

The decision of the Commissioner is reversed and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 4th day of January, 2019.

/s/ H. Russel Holland
United States District Judge